The Honorable Eddie C. Hawkins State Representative 15 Sharon Road Vilonia, AR 72173-9541
Dear Representative Hawkins:
I am writing in response to your request for an opinion on the following questions:
 1. If a school district's published salary schedule meets the minimum requirements established by Ark. Code Ann. § 6-17-2403, could the district adopt a new schedule on [sic] the 2007-2008 school year prior to May 1 that would be effective in the 2008-2009 school year and would maintain individual contracted salaries at the same level for the 2008-2009 school year as are in effect for the 2007-2008 year? (The new schedule would not affect increases earned for professional training, etc.)
 2. Additionally, if the district makes that change in its 2008-2009 salary schedule, would it violate Ark. Code Ann. § 6-17-1507, the Teacher Fair Dismissal Act?
RESPONSE
In my opinion, as a general proposition, the answer to your first question is "yes," but the law is unclear regarding the necessary procedure for accomplishing such a change. With regard to your second question, I assume this is asking whether such a change in the salary schedule can be made without following the procedures under the Teacher Fair Dismissal Act (hereinafter "TFDA"), A.C.A. §§ 6-17-1501 § 1510 (Repl. 1999 and Supp. 2007). This implicates what one of my predecessors characterized as the "mutually exclusive" operation and effect of the TDFA's May 1 automatic renewal date for contracts, and the July 1 effective date for amendments to "personnel policies" pursuant to A.C.A. § 6-17-204 (Supp. 2007). Op. Att'y Gen. 92-097. Because this matter has not been clarified by the legislature or the courts, I cannot definitively opine on the issue.
With regard to the minimum requirements referenced in your first question, A.C.A. § 6-20-2305 states that school districts shall file a "salary schedule" as follows in order to obtain state funds pursuant to the Public School Funding Act of 2003, A.C.A. §§ 6-20-2301 § 2307 (Supp. 2007):
 (4)(A) Each year the school district shall file with the state board a salary schedule for its certified employees that recognizes a minimum level of training and experience.
 (B) The schedule shall reflect the actual pay practices of the school district, including fringe benefits.
 (C) Salary increments for experience or education, or both, shall be identified on the schedule[.]
A.C.A. § 6-20-2305(f) (Supp. 2007).
A "minimum salary schedule" for teacher salaries is further outlined by A.C.A. § 6-17-2403, which states in part:
 The board of directors in each school district in the state shall pay classroom teachers upon a minimum salary schedule that provides:
 (1) Annual increments for education and experience;
 (2) A base salary; and
 (3) A minimum salary for a teacher with a master's degree and at least fifteen (15) years' experience.
A.C.A. § 6-17-2403(a) (Supp. 2007).[1]
Your question assumes that the district has adopted a salary schedule that meets these minimum requirements. The issue is whether the district could adopt a new schedule for 2008-2009 that would maintain, i.e., "freeze" salaries at the 2007-2008 level, or whether this is prohibited because teachers must receive salary increases based on the increments shown on the schedule.
I do not interpret A.C.A. § 6-17-2403 as establishing such a guaranteed increase in salary from one year to the next. Any new salary schedule clearly must include "annual increments" as required by subsection 6-17-2403(a)(1). But it seems that the requirements of A.C.A. § 6-17-2403 will be met as long as teachers in 2008-2009 are paid based upon a schedule that includes the increments. I note that one of my predecessors reached a similar conclusion regarding a previous similar statute governing minimum teacher salaries. Attorney General Opinion92-097 observed:
 [W]e find no law expressly prohibiting the `freezing' of teacher salaries from one year to the next. While A.C.A. § 6-17-1001 (Cum. Supp. 1991) requires school districts to pay teachers upon a salary schedule which has annual increments for education and experience, it appears that payment based upon an amended schedule would still comply with this language, as least if not amended perpetually to avoid the schedule requirement.
Id. at n. 2.
My predecessor further observed that the annual increments for experience under the previous statute created only a "goal . . . and not a requirement." Id. (citing Op. Att'y Gen. 91-366). I note that A.C.A. § 6-17-2403 does not refer to the scheduled increments as a "goal."[2]
It is therefore distinguishable from the previous statute to that extent. But it does not necessarily follow that payment of the increments each year is now mandated. The essential observation in my opinion still stands: Payment based upon an amended salary schedule will still comply if the schedule has the required annual increments.
One further observation regarding a relatively recent change in the law in this area is necessary. The legislature in 2003 amended the previous minimum teacher salary statute § A.C.A. § 6-17-1001 § to require a teacher's experience for purposes of salary to be "his or her total years in any school district in the state," and not only "the years in the district in which he or she is currently employed."See Acts 2003, No. 1768, § 1. Another statute § A.C.A. §6-17-204(c)(1)(A) and (B) § had authorized school districts to limit past years of experience. This office concluded that the 2003 act impliedly repealed A.C.A. § 6-17-204(c)(1)(A) and (B). See Op. Att'y Gen. 2003-181. See also Op. Att'y Gen. 2003-202 (concluding thatAct 1768 of 2003 applied to all existing teachers and not just to those newly hired by a district.) This requirement that a teacher's experience be "his or her total years' experience" is included in the current law at A.C.A. § 6-17-2403(d) (Supp. 2007).[3]
The "annual increments for . . . experience" requirement under A.C.A. § 6-17-2403(a)(1) can thus be understood to ensure that teachers are appropriately paid according to the salary schedule. It does not appear to be tantamount to a mandate that teachers must invariably receive salary increases each year, as long as they are being paid at least the minimum compensation set forth in A.C.A. § 6-17-2403.
In response to your first question, therefore, the apparent absence of any clear proscription against freezing teacher salaries compels me to conclude that a district could, as a general proposition, adopt a new teacher salary schedule for the 2008-2009 school year that would maintain salaries at the 2007-2008 level.
Your second question raises the issue of the necessary procedure for making such a change. I assume that by referencing the Teacher Fair Dismissal Act (TFDA), A.C.A. §§ 6-17-1501 § 1510 (Repl. 1999 and Supp. 2007), you are asking whether the TFDA must be followed. There are two potential approaches to this question. Under one approach, following the TFDA is unnecessary because the teacher salary schedule is a part of the school district's "personnel policies," see A.C.A. § 6-17-201(a) (Supp. 2007), which may be set by the district's board of directors, subject to the qualification that a personnel policies committee must be afforded an opportunity to review a proposal for at least ten days before the board of directors' vote on the proposal. See generally Op. Att'y Gen.2002-138 (regarding the process for changing existing policy). According to this view of the matter, the teacher salary schedule may be "downshifted," so to speak, by amending the personnel policies to this effect, so that teachers with an additional year of experience will be paid the same amount they received the previous year. The change in personnel policy will not be effective until the next fiscal year, unless approved by a majority of the certified personnel. See A.C.A. § 6-17-204(b) (Supp. 2007). At the time it becomes effective, however, following this interpretation, it will apply to the 2007-2008 contracts.
The alternative, competing view is that the TFDA must be followed because the teacher salary schedule is a "term" of each teacher's contract. The schedule is a part of the district's personnel policies,see A.C.A. § 6-17-201(a), which in turn are "considered to be incorporated as terms of the certified personnel contracts. . . ." A.C.A. § 6-17-204(a) (Supp. 2007). The TFDA provides in relevant part:
 (a) Every contract of employment made between a teacher and the board of directors of a school district shall be renewed in writing on the same terms and for the same salary, unless increased or decreased by law, for the next school year succeeding the date of termination fixed therein, which renewal may be made by an endorsement on the existing contract instrument unless:
 (1) By May 1 of the contract year, the teacher is notified by the school superintendent that the superintendent is recommending that the teacher's contract not be renewed;
 (2) During the period of the contract or within ten (10) calendar days after the end of the school year, the teacher shall send . . . his or her resignation as a teacher; or
 (3) The contract is superseded by another contract between the parties.
A.C.A. § 6-17-1506 (Rep. 1999).
The TFDA therefore provides for automatic renewal of each teacher's contract on May 1 if no notice of nonrenewal is given, or there is no superseding contract. See generally Hilton v. Pine Bluff PublicSchools, 295 Ark. 397, 748 S.W.2d 648 (1988). The possible effect of this automatic renewal in connection with amending a salary schedule was aptly summarized by one of my predecessors as follows:
 The automatic renewal entitles the teachers to a contract for the same salary and for the same terms as the previous year contract. One of the terms of the contract renewed, according to this interpretation, is the teacher salary schedule which was effective at the time of that contract. This interpretation therefore concludes that if contracts are automatically renewed, the school district is bound to honor the unamended salary schedule, and pay the increments established therein, entitling teachers to a salary increase for an additional year of experience. This interpretation would therefore require either mutual consent of the teachers to the amendment of the salary schedule, so that the amendment would be effective immediately and be incorporated as a term of the new contracts on the May 1 automatic renewal date, or the negotiating of new contracts with the teachers.
Op. Att'y Gen. 92-097 at 3.
As my predecessor noted, under this interpretation, "no personnel policies of a district could be amended during the school year and become effective July 1 if automatic renewal is utilized. If old terms are locked in on May 1, prior to the effective date of any amendments, the amendments cannot operate to change those terms." Id. at 6-7.
Like my predecessor, I am unable to reconcile the overlapping concepts that emerge under the TFDA and the personnel policy amendments procedure. The "mutually exclusive" provisions were summarized in Opinion 92-097:
 The problem arises because there are `terms' of the contract, including, presumably, the teacher salary schedule, which are locked in on automatic renewal. A.C.A. § 6-17-1506. On the other hand there are `personnel policies,' which were, in the same legislative session, made `terms' of the contract and which are subject to amendment. A.C.A. § 6-17-204. These concepts thus overlap. . . . The operation and effect of the two dates (May 1 and July 1) are mutually exclusive. . . . A reading of these statutes thus reveals conflicting evidences of legislative intent. The statutes cannot be reconciled or employed simultaneously without reaching an outcome that in either case seems contrary in some aspect to other evidences of legislative intent.
Id. at 7.
According to my review, the matter has not been clarified, either by the legislature or through the courts. These circumstances prevent me from definitively opining in response to your second question.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
 DUSTIN McDANIEL Attorney General
DM:EAW/cyh
[1] Subsections 6-17-2403(b) and (c) set forth the following minimum schedules for the 2007-2008 and 2008-2009 school years:
In school year 2007-2008, each school district in the state shall have in place a salary schedule with at least the following minimum levels of compensation for a basic contract:
Years of Experience BA Degree Salary MA Degree Salary
 0 $28,897 $33,231
 1 29,347 33,731
 2 29,797 34,231
 3 30,247 34,731
 4 30,697 35,231
 5 31,147 35,731
 6 31,597 36,231
 7 32,047 36,731
 8 32,497 37,231
 9 32,947 37,731
 10 33,397 38,231
 11 33,847 38,731
 12 34,297 39,231
 13 34,747 39,731
 14 35,197 40,231
 15 35,647 40,731

In school year 2008-2009 and each school year thereafter, each school district in the state shall have in place a salary schedule with at least the following minimum levels of compensation for a basic contract:
Years of Experience BA Degree Salary MA Degree Salary
 0 $29,244 $33,630
 1 29,694 34,130
 2 30,144 34,630
 3 30,594 35,130
 4 31,044 35,630
 5 31,494 36,130
 6 31,944 36,630
 7 32,394 37,130
 8 32,844 37,630
 9 33,294 38,130
 10 33,744 38,630
 11 34,194 39,130
 12 34,644 39,630
 13 35,094 40,130
 14 35,544 40,630
 15 35,994 41,130

A.C.A. § 6-17-2403(b) and (c) (Supp. 2007)
[2] Subsection 6-17-2403 is part of the Teacher Compensation Program of 2003, A.C.A. §§ 6-17-2401 § 2407 (Supp. 2007). The act establishing this program repealed A.C.A. § 6-17-1001. See
Acts 2003 (2nd Ex. Sess.), No. 59, § 5.
[3] Subsection 6-17-2403(d)(1) states:
For purposes of the salary schedules described in this section, the teacher's experience is his or her total years' experience as a teacher with a valid Arkansas teaching license and teaching at any:
 (A) Public school accredited by the Department of Education or a nationally recognized accrediting association;
 (B) Private school within the State of Arkansas accredited by a nationally recognized accrediting association;
 (C) Institution of higher education within the State of Arkansas accredited by a nationally recognized higher education institution accrediting association; or
 (D) Any facility operated by the Division of Youth Services or any facility contracting with the division to provide care for juveniles committed to the division.
A.C.A. § 6-17-2403(d)(1) (Supp. 2007). *Page 1